UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KRISTIE C.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-02481-SEB-MPB |
| ) | |
| ANDREW M. SAUL, Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

# ORDER

Plaintiff Kristie C. ("Kristie") has appealed the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her February 25, 2015, application for disability insurance benefits ("DIB"). R. (Dkt. 7) at 10. The application was initially denied on May 4, 2015, R. at 87, and upon reconsideration on July 16, 2015. R. at 97. The administrative law judge ("ALJ") conducted a hearing on May 26, 2017, R. at 37, resulting in a decision on September 13, 2017, ruling that Kristie was not disabled and thus not entitled to receive DIB. R. at 7. The Appeals Council denied review on June 18, 2018, and the Commissioner's decision became final. R. at 1. On August 13, 2018, Kristie timely filed this civil action seeking judicial review of the decision, pursuant to 42 U.S.C. § 405(g). Dkt. 1.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

For the reasons below, the decision is reversed and the case remanded for action consistent with this order.

**<u>Background</u>**[2]

The ALJ followed the five-step sequential evaluation set forth by the SSA, *see* 20 C.F.R. § 404.1520(a)(4)(i) to (v), in concluding that Kristie was not disabled. Specifically, the ALJ found as follows:

- Kristie last met the insured status requirements for DIB on December 31, 2016 (the date last insured or "DLI").[3] R. at 12.

- At Step One, Kristie had not engaged in substantial gainful activity[4] since the alleged onset date of disability. *Id*.

- At Step Two, she had the following severe impairments: "fibromyalgia, osteoarthritis, morbid obesity, depression, and anxiety." *Id*. (citation omitted).

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. R. at 13.

- After Step Three but before Step Four, Kristie had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) except she would have been unable to climb ladders, ropes, or scaffolds and she would have been unable to crawl. She would have been able to occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. She would have needed to have no more than occasional exposure to workplace hazards such as unprotected heights and

---

[2] The discussion of Kristie's medical history and treatment includes sensitive and otherwise confidential medical information that has been thoroughly detailed in the ALJ's decision and the parties' respective briefs. To the extent possible, we detail here specific facts only as necessary to address the parties' arguments.

[3] Kristie must prove the onset of disability on or before her DLI to be eligible for benefits. *See Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012); *see also* 20 C.F.R. § 404.131. The ALJ's subsequent findings were properly limited to the relevant period at issue beginning with the alleged disability onset date, October 26, 2012, through the DLI. *See, e.g.,* R. at 12.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

dangerous machinery. She would have been able to perform understand, remember, and carry out simple instructions, she would have been able to respond appropriately to supervision and coworkers in usual work situations, should would [sic] have been able to deal with changes in a routine work setting." R. at 14.

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Kristie's RFC, she was incapable of performing any of her past relevant work. R. at 18.

- At Step Five, relying on the testimony of the VE and in light of Kristie's age (45 years of age on the DLI), education (at least a high school graduate), and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed, including representative occupations such as a cashier, merchandise marker, and router. R. at 18–19.

## Standard of Review

Upon review of the Commissioner's decision,

> [w]e will uphold [it] if it applies the correct legal standard and is supported by substantial evidence. *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). Our review is limited to the reasons articulated by the ALJ in his decision. *Larson v. Astrue,* 615 F.3d 744, 749 (7th Cir. 2010).

*Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). In determining whether the decision was properly supported, we neither reweigh the evidence nor assess the credibility of witness, nor substitute our judgment for the Commissioner's. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

## Analysis

Kristie presents three issues for review by the Court: that the ALJ (1) "played doctor" in weighing the opinion of a consultative examiner, (2) did not properly account

for the moderate nature of her limitations in concentration, persistence, or pace, all of which were found by the ALJ as supported in the record, and (3) did not properly evaluate Kristie's subjective symptoms. We address in turn the issues raised below.

**Consultative Examiner's Opinion**

Kristie's first contention on appeal is that the ALJ erred by "playing doctor" (that is, made a medical judgment) by relying on his lay opinion of her anxiety disorder rather than deferring to the opinion of a medical expert. We agree that the appropriate and necessary level of deference to the expert opinion was not accorded here.

Kristie was examined by clinical psychologist, Laura E. Boggs, Psy.D., on April 27, 2015, upon referral by the Disability Determination Bureau. R. at 285. Dr. Boggs diagnosed Kristie as having "Generalized Anxiety Disorder." R. at 289. Dr. Boggs, as consultative examiner, provided a medical source statement detailing Kristie's functional limitations as follows:

> Given her performance in today's examination, there is limited evidence [Kristie] would experience difficulties learning, remembering and comprehending simple instructions. During today's examination, she was able to recall three of three objects after a delay and distraction. In addition, she was able to complete verbal abstract reasoning and calculations (for the most part).
>
> Based on her performance on tasks during the evaluation[,] her ability to attend, concentrate and complete simple tasks is impaired. She was unable to complete serial 7s and exhibited difficulty with serial 3s.
>
> She may have difficulty handling routine changes found in the workplace. She denied difficulties interacting with others. In addition, she was found to interact with the examiner in today's evaluation in a cooperative manner.

R. at 290.

A consultative examiner's opinion must be given adequate consideration. The Seventh Circuit has explained:

> As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence. Not even the claimant's treating physician, who presumably is the expert most familiar with the claimant's condition, is given such complete deference.

*Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (citing *Hofslien v. Barnhart,* 439 F.3d 375, 376–77 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2) (additional citations omitted)). "But rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley*, 758 F.3d at 839 (citing *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."); 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.") (additional citations omitted)).

The ALJ's RFC finding here did not credit the disabling limitations assessed by Dr. Boggs, to wit, that Kristie would have an impaired ability to attend, concentrate on, and complete simple tasks, despite a capacity to learn, remember, and comprehend simple instructions. The ALJ also did not credit the opinion of Dr. Boggs that Kristie would have difficulty handling routine changes. Social Security Ruling ("SSR") 85-15 describes the effect of these limitations on the ability to perform work:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, *carry out*, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15 (S.S.A. Jan. 1, 1985), 1985 WL 56857, at *4 (emphasis added). "Social Security Rulings are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

The ALJ stated that he accorded to Dr. Boggs's opinion "extremely limited weight," reasoning that, "[i]n fact, overall, the opinion is inconsistent with the finding of anxiety, especially considering that no limitations were provided in her ability to deal with others while in the workplace." R. at 17.

The ALJ's rationale constitutes an impermissible overstep. The Seventh Circuit "has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (cited examples omitted). In *Rohan*, the Circuit Court ruled that "[w]ithout expressly relying on any medical evidence or authority, the ALJ determined that Mr. Rohan's efforts at engaging in a small machine repair/resale business were incompatible with a diagnosis of major depression and [a psychiatrist's] conclusions regarding Rohan's functional abilities." *Id*. "The salient fact of record is the testimony of the psychiatrist, a disinterested as well as expert witness. Everything else is rank conjecture." *Id*. at 971. "As far as discernible from this record, the ALJ simply indulged

6

his own lay view of depression for that of [the psychiatrist's]." *Id*. In *Meuser v. Colvin*, 838 F.3d 905, 911–12 (7th Cir. 2016), the Court of Appeals remanded the case based on the ALJ's "playing doctor" because "the ALJ fundamentally misunderstood the diagnosis and symptoms of schizophrenia," and the decision depended on an "incorrect interpretation of the medical evidence." In the case before us here, the ALJ was not qualified to determine, *sua sponte*, that a generalized anxiety disorder must necessarily affect a claimant's ability to interact with others or that such a generalized anxiety disorder is inconsistent with an impaired ability to sustain tasks and handle changes in the absence of limitations with interaction. For the ALJ to suggest as much without the support of a medical expert and in contrast to the qualified opinion of Dr. Boggs is an impermissible example of the ALJ "playing doctor."

Dr. Boggs supported her assessment of Kristie's limitations with references to portions of the examination she performed. In weighing opinion evidence, an ALJ is to consider, inter alia, the "supportability" of the opinion. 20 C.F.R. § 404.1527(c)(3). "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion." *Id*. Dr. Boggs explained that Kristie had denied difficulties interacting with others and that the examination had not revealed any relevant deficits. The ALJ held that this contradicted other observations by Dr. Boggs suggestive of Kristie's impaired ability to perform tasks on a sustained basis.

Kristie's testimony at the hearing, however, supported this distinction. The ALJ summarized Kristie's testimony that "[s]he loved working and helping others, but her

7

condition has made her less sociable, which has been difficult for her." R. at 15. The ALJ asked her, "How is your concentration and focus?" R. at 49. She testified, "Not good. I forget things all the time." *Id*. Later in the hearing, the ALJ inquired, "Now, when you worked for the doctor, did you like your job?" R. at 51. She responded, "I loved my job." *Id*. The ALJ continued, "What did you like about your job?" *Id*. Kristie testified, "I loved helping other people. I loved being able to schedule the appointments, help the doctor. I'm a very social person. So for me to not be able to work was really hard, but I got to the point where I was forgetting." *Id*. This distinction was not acknowledged or incorporated in the ALJ's finding.

In addition, Dr. Boggs's diagnostic impression had been supported by the independent assessment of a treating source. On December 9, 2016, just prior to Kristie's DLI, a supervising psychiatrist affiliated with her mental health provider, Magdoline Daas, M.D., noted that Kristie "continues to struggle with anxiety" and her symptoms included "[e]xcessive anxiety/worry occurring more days than not. She finds it difficult to control the worry. She is keyed up, easily fatigued, [has] difficulty concentrating and has trouble falling asleep and staying asleep." R. at 514. Dr. Daas also noted that Kristie "reported anxiety in social and new situation[s]." *Id*. Dr. Daas's diagnostic assessment of Kristie was that she suffered from "GAD" [generalized anxiety disorder]. *Id*. However, her symptoms relate primarily to an ability to sustain tasks, not to an impairment of her ability to interact.

We have also examined the ALJ's other reasons for discounting Dr. Boggs's opinion, which we find to be problematic as well. The ALJ explained that Kristie "has

8

worked and has been able to continue household chores." Her earnings records revealed that, following her onset of disability, she had earned an aggregate total of $3119 during four separate quarters in 2014 and 2015. R. at 154. The ALJ concluded that these earnings did not rise to the level of substantial gainful activity. Kristie testified that she had filled in for a week or two with her former employer, Dr. Beck, when someone went on vacation, but "he let me go home early." R. at 43 (*see* R. at 154–56 showing Dr. Beck as her listed employer both in the past and in 2014 and 2015). Again, the Seventh Circuit has "cautioned ALJs not to draw conclusions about a claimant's ability to work full time based on part-time employment." *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017). The brief employment with a former employer that arguably reflected her inability to work a full day does not constitute substantial evidence undermining Dr. Boggs's assessment that Kristie would be unable to sustain simple tasks.

Similarly, the ALJ apparently did not consider Kristie's capacity to perform household chores. An ALJ may appropriately consider a claimant's daily activities, including household chores. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (citing 20 C.F.R. § 404.1529). However, the Seventh Circuit proscribes attributing undue weight to the performance of daily activities that "ignore[s the claimant's] qualifications as to *how* [she] carried out those activities." *Craft*, 539 F.3d at 680 (emphasis in original). In her functional reports, Kristie described scheduling her daily activities around her symptoms, her need to take frequent breaks, and dealing with issues of concentration and completing tasks. *See* R. at 174–82; R. at 200–08.

9

The ALJ's final reason for denying disability was that Kristie had "reported that medication treatment controls her symptoms." R. at 17. Noting that during a consultative physical examination in May 2015 Kristie had "reported that her depression and anxiety were well controlled by medications," and that Kristie had informed Dr. Boggs "that she experiences benefit from her medications, specifically Xanax," R. at 16 (citing R. at 293), the ALJ determined that Kristie's mental impairments were amenable to medication and thus resolved in terms of their disabling effect. Kristie did tell Dr. Boggs that she could sleep four hours at a time with Xanax, but Kristie also reported that she never knows how severe her anxiety will be on a given day and that she still has mild panic attacks. R. at 286. Even so, Dr. Boggs determined that Kristie's ability to sustain tasks was impaired. Dr. Daas's subsequent assessment (detailed above) indicating an ongoing struggle with anxiety came in the context of her reported improvement based on the anxiety medications and a finding "that her depression [had] been in remission for a long time [at that point]." R. at 514. Dr. Daas found that Kristie evidenced major depressive disorder, "in remission," along with generalized anxiety disorder, without any indication the condition was not active. *Id*.

The ALJ failed to acknowledge any of this contradictory evidence, including Kristie's ongoing symptoms and struggle with anxiety. The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009);

*Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012)).

Accordingly, we hold that a remand is required for a full and fair reconsideration of Dr. Boggs's supportive consultative assessment by the ALJ.

### Concentration, Persistence, or Pace

Kristie further asserts that the ALJ's RFC finding and the corresponding limitations put to the VE during the hypothetical questioning failed to adequately account for the moderate limitations with concentration, persistence, or pace that the ALJ determined were supported by the record. The ALJ may need to reconsider Kristie's RFC in reconsidering Dr. Boggs's opinion, so our analysis of the issue will be abbreviated here. Even that limited level of review, however, is frustrated by the ALJ's failure to include any explanation for his conclusion that moderate limitations with concentration, persistence, or pace found support in the record. R. at 13.[5] To provide some guidance on remand, we state here our agreement that the ALJ's RFC finding does not adequately account for temperamental difficulties Kristie appears to experience with concentration, persistence, or pace.

The Seventh Circuit has held: an "ALJ need not use 'specific terminology,' but we have 'repeatedly rejected the notion that a hypothetical ... confining the claimant to

---

[5] The ALJ found the relevant moderate limitations while assessing the "paragraph B" criteria used to rate the severity of mental impairments at Steps Two and Three of the sequential evaluation process. 20 C.F.R. § 404.1520a(d)–(e). However, the RFC assessment used at Steps Four and Five requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorder listings. SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *4.

11

simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (quoting *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014)); *see also Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016)). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620 (citing *Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009); *Craft*, 539 F.3d at 677; *see also* SSR 85-15, 1985 WL 56857 at *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.")). As noted above, Dr. Boggs's opinion drew the relevant distinction between Kristie's ability to comprehend simple instructions and her impaired ability to perform simple tasks on a sustained basis. In evaluating on remand, the significance of Dr. Boggs's opinion, the ALJ should take steps to ensure that any temperamental difficulties experience by Kristie with issues such as concentration, persistence, or pace be adequately reflected in the RFC findings and fully and accurately communicated to the VE.

**Subjective Symptoms**

For the same reasons, we also decline to provide an extended analysis of the ALJ's subjective symptom evaluation. Kristie's statements as to her subjective symptoms must be evaluated in the context of Dr. Boggs's opinion and her RFC. We have identified certain deficiencies in the ALJ's assessment of Kristie's subjective symptoms—an improper reliance on limited work activity during the relevant period, the omission of any discussion of the qualifications Kristie placed on her ability to perform daily activities, and the failure to acknowledge conflicting evidence concerning control of her anxiety symptoms with medication. To provide guidance on remand, we raise here an additional matter that may impact the analysis by the ALJ.

One of the "inconsistencies" relied upon by the ALJ in reducing Kristie's credibility was that "during the relevant period, the claimant applied for unemployment benefits, which required her to report that she was willing and able to work, and she has worked albeit temporarily." R. at 17. Seventh Circuit authority teaches that state unemployment benefits, which typically require a certification by the claimant that she is able to work, can be considered as part of an adverse credibility determination when the benefits overlap with the period of alleged disability. *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Lambert v. Berryhill*, 896 F.3d 768, 778 (7th Cir. 2018). Kristie's disability onset, however, did not occur until October 26, 2012 and, in any event, she was ultimately denied unemployment benefits. R. at 42. Her employment ended in June 2010. *Id*. Thus, her application for unemployment benefits preceded her period of claimed disability and is not a factor that would undermine her credibility.

## Conclusion and Order

For the reasons explained above:

The ALJ's decision is REVERSED and the case is REMANDED for proceedings consistent with this order under sentence four of 42 U.S.C. § 405(g). Final judgment shall issue in a separate order. Fed. R. Civ. P. 58(a).

IT IS SO ORDERED.

Date: ___8/21/2019___

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov